IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EPIC TECH, LLC, | ) |
|     *Plaintiff,* | ) ) ) |
| v. | ) Civil Action No. _____ |
| VGW LUCKYLAND, INC. and VGW HOLDINGS US, INC., | ) ) ) ) |
|     *Defendants.* | ) |

**<u>VERIFIED COMPLAINT FOR INJUNCTION AND DAMAGES</u>**

Plaintiff Epic Tech, LLC ("Epic Tech" or "Plaintiff") files this Verified Complaint for Injunction and Damages ("Complaint") against Defendants VGW Luckyland, Inc. and VGW Holdings US, Inc. (collectively, "Defendants") and shows as follows:

**<u>JURISDICTIONAL ALLEGATIONS</u>**

1. Plaintiff Epic Tech, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 55 Pearson Way, Suite E, Lavonia, Georgia 30553.

2. Defendant VGW Luckyland Inc. ("Luckyland") is a corporation organized under the laws of the State of Delaware. Luckyland may be served by service on its registered agent in Delaware.

3. Defendant VGW Holdings US, Inc. ("Holdings") is a corporation organized under the laws of the State of Delaware. Holdings may be served by service on its registered agent in Delaware.

4. This Court has subject matter jurisdiction pursuant to, amongst other bases, 15 U.S.C. § 1051 *et seq.* (the Lanham Act), 28 U.S.C. § 1331, and 28 U.S.C. § 1338(b).

5. Specifically, this Court has subject matter jurisdiction over the Federal claims pursuant to 28 U.S.C. § 1331(a) (original jurisdiction in trademark cases) and 15 U.S.C. § 1114 *et seq.* (the Lanham Act).

6. Defendant Luckyland is a Delaware corporation and is subject to personal jurisdiction in the State of Delaware.

7. Defendant Holdings is a Delaware corporation and is subject to personal jurisdiction in the State of Delaware.

8. Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. § 1391(b)(1).

**FACTS**

9. Epic Tech is a business engaged in the design, development, manufacture, operation, distribution, and sale and lease of proprietary computer gaming hardware and software. Plaintiff's proprietary gaming hardware and software products are sold and leased throughout the United States and the world, and are used in a variety of locations to conduct gambling games (where permitted by law), social casino games, and other sorts of gaming entertainment.

10. One of the many gaming software titles distributed and sold by Epic Tech is "Lucky Duck."

11. Epic Tech's predecessor-in-interest, Gateway Gaming, Inc. ("Gateway") filed an application for protection of the image mark (which contains the literal element "LUCKY DUCK") (the "Mark") on or about March 9, 2010. On or about September 28, 2010, the Mark was duly registered by the United States Patent and Trademark Office ("USPTO") under Registration No. 3853565. A true and correct copy of the registration with the USPTO is attached hereto as Exhibit A.

12. On or about September 17, 2014, the registration for LUCKY DUCK was assigned to Gateway's wholly-owned subsidiary Epic Tech.

13. As is set forth in the application and registration materials, Epic Tech has used the Mark on "Gaming equipment, namely gaming machines in Class 9."

14. Epic Tech timely filed declarations of use and incontestability for the Mark on October 5, 2015 and July 27, 2020.

15. On November 27, 2015, the USPTO acknowledged Epic Tech's continuing use of the Mark as incontestable.

16. As is set forth in the application and registration materials associated with the Mark, Epic Tech (and its predecessors-in-interest) has continuously used the Mark in commerce since April 1, 2007.

17. The Mark is currently used on gaming machine consoles in use throughout the United States.

18. The Mark is displayed on the physical cabinet of the game as well as displayed on the screen by the software that is the actual game.

19. In the United States since 2010, Epic Tech's Lucky Duck game has been deployed and used in nearly 1400 different locations.

20. The LUCKY DUCK Mark is famous and is widely known and recognized throughout the general public.

21. Epic Tech's LUCKY DUCK Mark is recognized by the owners and operators of locations where the video game is deployed as a high-quality video gaming product produced by Epic Tech.

22. Epic Tech's LUCKY DUCK Mark is also recognized by the patrons of locations where the video game is deployed who wager or otherwise pay to use the Lucky Duck game at those locations.

23. Epic Tech's wholly owned subsidiary, Big Frog Games, LLC ("Big Frog") has developed a free-to-play social casino game titled "Lucky Duck Slots," which is available to be downloaded and played on mobile devices.

24. The Big Frog Lucky Duck Slots game was released on the Google Play Store on or about March 12, 2014.

25. The Big Frog Lucky Duck Slots game was released on the Apple App Store on or about February 7, 2014.

26. A true and correct copy of the Google Play Store page for Big Frog's Lucky Duck Slots is attached hereto as Exhibit B.

27. A true and correct copy of the Apple App Store page for Big Frog's Lucky Duck Slots is attached hereto as Exhibit C.

28. Defendants operate a website at the URL luckylandslots.com (the "Website").

29. The terms of service for the Website describe it as an "online social game."

30. A true and correct copy of the Website's Terms of Service (the "TOS") is attached hereto as Exhibit D.

31. The Website allows players to play various simulated slot-machine and other casino games using two different forms of virtual currency, "Gold Coins," and "Sweeps Coins."

32. The TOS defines "Gold Coins" as "the virtual social currency which enables you to play Standard Play Games. Gold Coins have no monetary value and cannot under any circumstances be redeemed for prizes."

33. The TOS defines "Sweeps Coins" as "sweepstakes entries subject to the Sweeps Rules. We may give you Sweeps coins free of charge when you sign up to a Platform, as a bonus when you purchase Gold Coins or via each of our free alternative methods of entry as set out in the Sweeps Rules. You may win more Sweeps Coins when you play Promotional Play Games. YOU CANNOT PURCHASE SWEEPS COINS."

34. The rules for the Sweepstakes operated by Defendants (the "Sweeps Rules") purport to allow players, including players in the United States, to wager their Sweeps Coins via the Website with the possibility of winning a prize that Defendants will pay out in cash.

35. As of the date of this Complaint, Defendants' Website has approximately ninety different (90) game titles that players can select to play.

36. Included in these titles are "Lucky Duck," "Duck and Roll," and "Lucky Duck Instant WIN!".

37. True and correct copies of the Defendants' Website showing each of the titles identified in Paragraph 36 are attached hereto as Exhibits E, F, and G.

38. Defendants make extensive use of the words "Lucky Duck" on the Website and in their e-mail and social media marketing advertising the Website.

39. Defendants make extensive use of the image of a duck that is similar to the Mark in their e-mail and social media marketing advertising the Website.

40. Defendants' use of the image of a duck that is similar to the Mark occurs with and without the use of the term "Lucky Duck."

41. True and correct samples of Defendants use of the words "Lucky Duck" and/or the image of a duck similar to the Mark are attached hereto as Exhibit H.

42. Upon information and belief, Defendants initially launched the Website in or around August 2018.

43. Upon information and belief, Defendants have used the words, "Lucky Duck" and an image of a duck similar to the Mark on the Website and in their marketing materials for the Website since August 2018.

44. Defendants have used (and are continuing to use) the "Lucky Duck" name and images similar to the Mark in connection with the social and sweepstakes games on the Website and in marketing materials for the Website.

45. Defendants' Website generates significant revenue for Defendants by the sale of virtual currency by users of the Website.

46. Plaintiffs first became aware of games on Defendants' Website titled "Lucky Duck" in or around August 2022.

47. On August 31, 2022, counsel for Epic Tech sent a cease-and-desist letter (the "C&D Letter") to the respective registered agents for each Defendant in Delaware and California, demanding that Defendants immediately cease and permanently desist from any further use of any words and/or images that are identical or similar to Epic Tech's LUCKY DUCK Mark.

48. A true and correct copy of the August 31, 2022 C&D Letter is attached hereto as Exhibit I.

49. Defendants (via their registered agents) received the copies of the C&D letter on or about September 6 and 7, 2022.

50. True and correct copies of the delivery receipts for the copies of the C&D letters are attached hereto as Exhibit J.

51. The Defendants' use of the "Lucky Duck" title for their online simulated slot machine games is similar to the literal element of Epic Tech's LUCKY DUCK Mark.

52. The duck images used by Defendants in conjunction with: (a) their marketing and operation of their for online social casino website, and (b) the games available on the Website is similar to the graphical element of Epic Tech's LUCKY DUCK Mark.

53. Defendants use and infringement of Epic Tech's LUCKY DUCK Mark was and is willful.

54. Defendants' use and infringement of Epic Tech's LUCKY DUCK Mark was undertaken with the goal and intention of capitalizing on the good will and recognition of Epic Tech's Mark.

55. Defendants were, at all times, aware of the illegal nature and consequences of their infringement.

## COUNT I - FEDERAL TRADEMARK INFRINGEMENT

56. Plaintiff realleges and incorporates into this count by reference the allegations contained in Paragraphs 1 through 55 as if those allegations were again set forth in full.

57. Defendants' unauthorized use in commerce of the title "Lucky Duck" in connection with their online social casino Website is likely to result in confusion, deception, and/or mistake with respect to Plaintiff's LUCKY DUCK Mark by consumers of video gaming products and other members of the general public.

58. Defendants' unauthorized use of duck imagery in commerce in connection with their online social casino Website is likely to result in confusion, deception, and/or mistake with respect to Plaintiff's LUCKY DUCK Mark by consumers of video gaming products and other members of the general public.

59. Defendants have used and are continuing to use the words "Lucky Duck" and/or imagery in connection with their online social casino Website with full knowledge of Plaintiff's prior and extensive rights in the LUCKY DUCK Mark and with the bad faith intent and purpose of trading upon the goodwill of Plaintiff's LUCKY DUCK Mark.

60. Defendants' infringement is willful and deliberate.

61. Defendants unauthorized use in commerce of the confusingly similar "Lucky Duck" title and duck imagery constitutes an infringement of Plaintiff's LUCKY DUCK Mark pursuant to 15 U.S.C. § 1114 *et seq.*

62. As a result of Defendants' actions, Plaintiff has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial. Unless enjoined by this Court, Defendants will continue these acts, thereby causing Plaintiff further immediate and irreparable damage.

## COUNT II - FEDERAL UNFAIR COMPETITION

63. Plaintiff realleges and incorporates into this count by reference the allegations contained in Paragraphs 1 through 55 above as if those allegations were again set forth in full.

64. Defendants have and are engaged in acts of unfair competition through the false designation of origin in violation of Section 43 of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

65. Defendants have and are using the title "Lucky Duck," which is functionally identical to the literal element of Plaintiff's LUCKY DUCK Mark, without authorization.

66. Defendants have and are using duck imagery which is functionally identical to the literal element of Plaintiff's LUCKY DUCK Mark, without authorization.

67. Defendants have made and are making false express and implied representations that its "Lucky Duck" products and/or services originate with, are associated with, and/or are

8

endorsed or allowed by Plaintiff in such a manner as to create a likelihood of confusion among consumers, thereby inducing the belief that, contrary to fact, Defendants' products are sponsored by, approved by, or otherwise tolerated by Plaintiff.

68. Defendants' unauthorized use in commerce of the "Lucky Duck" title and duck imagery in connection with Defendants' marketing, distribution, promotion, and operation of their online social casino Website for the consuming public (especially consumers of video game products) constitutes a misappropriation of the distinguishing and identifying features that Plaintiff created through substantial effort and expense.

69. Defendants' actions constitute violations of 15 U.S.C. § 1125(a) in that such false designations and representations of origin and quality are used on or in connection with the products and services that Defendants caused to enter into and affect interstate commerce.

70. Defendants have used and are continuing to use the "Lucky Duck" title and duck imagery with full knowledge of Plaintiff's extensive and longstanding rights in the LUCKY DUCK Mark, and therefore with an intent and bad faith purpose to trade upon the goodwill of the Mark.

71. Defendants' infringement is thus willful and deliberate.

72. Defendants' unauthorized use in commerce of the "Lucky Duck" title and duck imagery constitutes unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and, as a result, every sale made by Defendants was diverted from Epic Tech.

73. Defendants' acts have irreparably damaged, impaired, and diluted Plaintiff's goodwill and good name.  Plaintiff has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial.  Unless enjoined by this

Court, Defendants will continue these acts thereby causing Plaintiff further immediate and irreparable damage.

## COUNT III - DILUTION OF FAMOUS MARK

74. Plaintiff realleges and incorporates into this count by reference the allegations contained in Paragraphs 1 through 55 above as if those allegations were again set forth in full.

75. Defendants have and are engaged in acts constitution dilution of a famous mark in violation of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. § 1125(c).

76. Defendants have made commercial use of the "Lucky Duck" title and duck imagery with the willful intent to trade on Plaintiff's reputation and to cause dilution of the famous LUCKY DUCK Mark.

77. Defendants' use of the "Lucky Duck" title and duck imagery began long after Plaintiff's LUCKY DUCK Mark had become well-known and famous.

78. Defendants' use of the "Lucky Duck" title and duck imagery causes dilution of the LUCKY DUCK Mark's distinctive quality.

79. Defendants' use of the "Lucky Duck" title and duck imagery lessens the public's capacity to identify and distinguish Plaintiff's LUCKY DOCK goods and services.

80. Defendants have used and continue to use the "Lucky Duck" title and duck imagery with full knowledge of Plaintiff's long-held prior rights in the LUCKY DUCK Mark and the fame of that Mark.

81. Defendants' use of the "Lucky Duck" title represents a deliberate intent and bad-faith purpose to trade upon the goodwill of Plaintiff's LUCKY DUCK Mark and/or to dilute the distinctive quality of the LUCKY DUCK Mark, to blur and diminish the distinctive quality of the LUCKY DUCK Mark, and/or to lessen the LUCKY DUCK Mark's capacity to identify and distinguish the goods and services of Plaintiff.

82. Defendants' activities complained of herein constitute dilution within the meaning of Section 43(c) of the Trademark Act of 1946, 15 U.S.C. § 1125(c).

83. As a result of Defendants' acts, Plaintiff has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial. Unless enjoined by this Court, Defendants will continue these acts, thereby causing Plaintiff further immediate and irreparable damage.

**COUNT III – VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT, 6 DEL. C. § 2531, ET SEQ.**

84. Plaintiff realleges and incorporates into this count by reference the allegations contained in Paragraphs 1 through 55 above as if those allegations were again set forth in full.

85. Defendants' use of the Marks constitutes a deceptive trade practice injurious to the business interests of the Plaintiff and in violation of the Delaware Deceptive Trade Practices Act, 6 Del. C. §§ 2532-36. In particular, Defendants' use of the Marks in the sale of goods:

(a) passes off goods as those of another (Section 2532(a)(1));

(b) causes a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services provided by or through Defendants (Section 2532(a)(2));

(c) causes a likelihood of confusion of or misunderstanding as to affiliation, connection, or association with, or certification by the Plaintiff of Defendants and their business (Section 2532(a)(3));

(d) implicitly represents that goods or services provided by or through Defendants have sponsorship, approval, authorization, status or qualities that they do not have (Section 2532(a)(5)); and

(e) similarly creates a likelihood of confusion or of misunderstanding with respect to the Plaintiff's involvement with Defendants' sale of goods (Section 2532(a)(12)).

86. Defendants' deceptive trade practices have confused and deceived, and have a tendency to confuse and deceive, members of the public.

87. Plaintiff has been damaged by Defendants' deceptive trade practices and is likely to be damaged further by those practices if they continue.

88. The deceptive trade practices described above are causing Plaintiff to suffer injury for which there is no adequate remedy at law. Defendants' conduct will therefore cause the Plaintiff to suffer irreparable harm unless Defendants are preliminarily and permanently restrained by this Court.

**COUNT IV – VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT.**

89. Plaintiff realleges and incorporates into this count by reference the allegations contained in Paragraphs 1 through 55 above as if those allegations were again set forth in full.

90. Delaware's Consumer Fraud Act provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice." *6 Del. C. § 2513*.

91. The Consumer Fraud Act defines "merchandise" broadly: "'Merchandise; means any objects, wares, goods, commodities, intangibles, real estate or services," and dealership opportunities constitute merchandise. *6 Del. C. § 2511(6)*.

92. The Consumer Fraud Act provides a private right of action to any "victim of a violation" of the Act. *6 Del. C. § 2525*.

12

93. Defendants misrepresent to the consuming public in Delaware that its products has an affiliation with or is endorsed by Plaintiff.

94. Consumers were or could have been misled, deceived and/pr damaged based on the misrepresentations that the products were affiliated with or endorsed by Plaintiff when deciding to purchase the Defendants' product, and therefore, Plaintiff suffered damages as a result.

95. Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

96. Plaintiff is entitled to damages under the Act in an amount to be determined at trial.

97. Defendants engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages in an amount to be determined at trial.

98. Plaintiff also seek an order enjoining each Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Delaware Consumer Fraud Act.

### COUNT V – COMMON LAW TRADEMARK INFRINGEMENT

99. Plaintiff realleges and incorporates into this count by reference the allegations contained in Paragraphs 1 through 55 above as if those allegations were again set forth in full.

100. Defendants' conduct as described herein violates Plaintiff's common law trademark rights in LUCKY DUCK by creating a likelihood of confusion between Defendants' goods/services and Plaintiff's.

101. The product name incorporating Lucky Duck on Defendants' product, website, and in advertisements, is identical, -- or nearly identical and confusingly similar to, and/or a colorable imitation of- to the Plaintiff's LUCKY DUCK common law rights.

102. Defendants' use therefore infringes Plaintiff's trademark rights and interests in LUCKY DUCK, and is likely to cause confusion and mistake and to deceive the public as to the approval, sponsorship, license, source or origin of the products.

103. Upon information and belief, these wrongful acts were committed with knowledge that such use, as described, was intended to be used to cause confusion, or to cause mistake, or to deceive, and Defendants have profited and been unjustly enriched by sales that they would not otherwise have made but for the unlawful conduct.

104. Because of Defendants' conduct, Plaintiff has been damaged and is entitled to damages, including but not limited to, Defendants' profits made while using the LUCKY DUCK Marks, or wording that is substantially similar, and related advertisements, punitive damages, costs of litigation, the cost of corrective advertising and attorney's fees.

105. Defendants' willful and deliberate acts described above have caused irreparable injury to Plaintiff's goodwill and reputation, and, unless enjoined, will cause further irreparable injury, whereby Plaintiff has no adequate remedy at law.

## COUNT VI – COMMON LAW UNFAIR COMPETITION

106. Plaintiff realleges and incorporates into this count by reference the allegations contained in Paragraphs 1 through 55 above as if those allegations were again set forth in full.

107. Defendants' willful acts are calculated to procure an unfair competitive advantage by destroying the valuable goodwill and intellectual property developed by Plaintiff at substantial effort and expense.

108. Defendants' willful acts are likely to mislead the public into believing that its products emanate from or have been endorsed by Plaintiff.

109. Defendants' goods identified by Plaintiff's name constitute unfair competition in violation of the common law of the state of Delaware.

110. As a result of Defendants conduct, Plaintiff has suffered and continues to suffer irreparable damage.

111. Plaintiff has no adequate remedy at law and therefore, is entitled to permanent injunctive relief.

112. Defendants actions are unlawful and have damaged Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Epic Tech, LLC prays for judgment against Defendants that includes:

(a) A permanent injunction enjoining Defendants and any affiliated persons or entities (including their officers, directors, agents, employees, successors, and assigns and all others acting in knowing concert with them) from directly or indirectly:

  (1) Using the LUCKY DUCK Mark or any confusingly similar mark or designation in connection with the marketing, promotion, and/or sale of video gaming related products, including mobile and Internet social casino gaming applications;

  (2) Engaging in any other or further acts of unfair competition against Epic Tech;

  (3) Using any trademark or trade name which will be likely to dilute the distinctive quality of the LUCKY DUCK Mark; and

  (4) Engaging in any deceptive trade practices in the offering of goods or services under or by the use of the LUCKY DUCK Mark and/or any other variation or simulation of that Mark.

(b)   Damages as set forth in 15 U.S.C. § 1117 (a), *6 Del. C. § 2531, ET SEQ., 6 Del. C. § 2513*, and under Delaware's common law trademark infringement and unfair competition framework, including but not limited to, special and general damages in an amount to be proved at trial, all profits generated by Defendant from the infringement of the LUCKY DUCK Mark;

(c)   Punitive damages to be determined at trial;

(d)   Epic Tech's reasonable attorney fees as set forth in 15 U.S.C. § 1117(a);

(e)   Costs of suit incurred herein as set forth in 15 U.S.C. § 1117(a);

(f)   An order directing Defendant to file with this Court and to serve upon Epic Tech within thirty (30) days after entry of the order a sworn written statement setting forth the manner, form, and details of Defendant's compliance with the other terms of the Court's order(s) and judgment herein; and

(g)   Such other and further relief as this Court deems just and proper.

Dated: January 31, 2023

OF COUNSEL:

Kelly O. Wallace
Samuel A. Mullman
WELLBORN, WALLACE & MULLMAN, LLC
1218 Menlo Drive NW, Suite E
Atlanta, GA 30318
Telephone: (404) 352-3990
kelly@wellbornlaw.com
sam@wellbornlaw.com

Respectfully submitted,

PANITCH SCHWARZE BELISARIO & NADEL LLP

*/s/ John D. Simmons*
John D. Simmons (#5996)
Keith A. Jones (#7011)
Wells Fargo Tower
2200 Concord Pike, Suite 201
Wilmington, DE 19820
Telephone: (302) 394-6030
Facsimile: (215) 965-1331
jsimmons@panitchlaw.com
kjones@panitchlaw.com

***Counsel for Plaintiff Epic Tech, LLC***