IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EPIC TECH, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 23-118-RGA |
| | ) |
| VGW LUCKYLAND, INC., and VGW HOLDINGS US, INC., | ) |
| | ) |
| Defendant. | ) |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT

OF COUNSEL:
Behnam Dayanim
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
(202) 339-8400

Gregory Beaman
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
(212) 506-5000

Sarah Shyy
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255
(949) 567-6700

Dated: May 15, 2024

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for VGW Luckyland, Inc. and VGW Holdings US, Inc.*

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1
SUMMARY OF ARGUMENT ....................................................................................................... 1
STATEMENT OF FACTS ............................................................................................................. 2
LEGAL STANDARD ..................................................................................................................... 3
ARGUMENT ................................................................................................................................... 3
I.      Plaintiff Will Not Be Prejudiced If the Entry of Default Is Vacated ................................. 4
II.     VGW Group Has Meritorious Defenses and Should Not Be Deprived of the
Opportunity for these Defenses to Be Weighed by the Court ........................................... 5
          A.     Plaintiff Cannot Establish Trademark Infringement or Likelihood of
Confusion (Counts I, II, III.b., V, and VI) ................................................................ 5
                  1.     Ownership & Validity ................................................................................... 6
                  2.     Likelihood of Confusion .............................................................................. 8
          B.     Plaintiff Cannot Establish Trademark Dilution (Count III.a.) ............................. 12
          C.     Plaintiff's Claim under the Delaware Consumer Fraud Act Fails Because
Plaintiff Fails to Plead Misrepresentations (Count IV) ........................................ 13
III.    VGW Group Is Not Culpable Because It Was Unaware of this Action and Thus
Missed the Deadline to Respond to the Complaint ............................................................. 14
CONCLUSION ............................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir. 2000) ........................................................................................5, 6, 9

*In re Bose Corp.*,
  772 F.2d 866 (Fed. Cir. 1985)..................................................................................................7

*Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*,
  333 F. Supp. 2d 239 (D. Del. 2004)..................................................................................5, 11

*Coach Servs., Inc. v. Triumph Learning LLC*,
  668 F.3d 1356 (Fed. Cir. 2012)..............................................................................................12

*Eames v. Nationwide Mut. Ins. Co.*,
  412 F. Supp. 2d 431 (D. Del. 2006)......................................................................................13

*Girafa.com, Inc. v. Smartdevil Inc.*,
  728 F. Supp. 2d 537 (D. Del. 2010)....................................................................................4, 5

*Hritz v. Woma Corp.*,
  732 F.2d 1178 (3d Cir. 1984).................................................................................................15

*Int'l Brotherhood of Elec. Workers, Loc. Union No. 313 v. Skaggs*,
  130 F.R.D. 526 (D. Del. 1990) ..........................................................................................4, 15

*J Supor & Son Trucking & Riggins Co., Inc. v. Kenworth Truck Co.*,
  791 F. App'x 308 (3d Cir. 2019) .............................................................................................5

*Mayhan v. Sunoco, Inc.*,
  2019 WL 2994548 (D. Del. July 9, 2019) ........................................................................3, 14

*Mil. Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*,
  251 F. Supp. 3d 750 (D. Del. 2017).......................................................................................5

*Miles v. Aramark Correctional Serv.*,
  236 F. App'x 746 (3d Cir. 2007) .............................................................................................3

*Parks LLC v. Tyson Foods, Inc.*,
  863 F.3d 220 (3d Cir. 2017)....................................................................................................7

*Purnell v. Delaware Dept. of Ins.*,
  2022 WL 610701 (D. Del. Feb. 25, 2022) ............................................................................15

*R.J. Ants, Inc. v. Martinelli Enters.*,
   771 F. Supp. 2d 475 (E.D. Pa. 2011) ...................................................................................10

*In re Save Venice New York, Inc.*,
   259 F.3d 1346 (Fed. Cir. 2001) ............................................................................................7

*Sweats Fashions, Inc. v. Pannill Knitting Co.*,
   833 F.2d 1560 (Fed. Cir. 1987) ............................................................................................7

*United States v. $55,518.05 in U.S. Currency*,
   728 F.2d 192 (3d Cir. 1984) .................................................................................................3

*Walker Wear LLC v. Off-White LLC*,
   624 F. Supp. 3d 424 (S.D.N.Y. 2022) ...........................................................................12, 13

*Williams v. Progressive Direct Ins. Co.*,
   631 F. Supp. 3d 202 (D. Del. 2022) ....................................................................................13

**Statutes**

15 U.S.C. § 1125(a)(1) .........................................................................................................5, 6, 14

15 U.S.C. § 1125(c)(2)(A) .........................................................................................................12

**Other Authorities**

Fed. R. Civ. P. Rule 9(b) ............................................................................................................13

Fed. R. Civ. P. Rule 55(a) ........................................................................................................1, 2

Fed. R. Civ. P. Rule 55(c) ............................................................................................................3

Defendants VGW Luckyland, Inc. ("VGW Luckyland") and VGW Holdings US, Inc. ("VGW Holdings") (collectively, "VGW Group" or "Defendants"), specially appearing while preserving all defenses, respectfully submit this opening brief in support of their motion to set aside the Rule 55(a) default entered by the Clerk on March 8, 2023 (D.I. 14).

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed this action against VGW Group on January 31, 2023, alleging trademark infringement and violation of federal and state unfair competition laws. The Clerk entered a Rule 55(a) default against VGW Group on March 8, 2023, due to VGW Group's failure to respond to the Complaint. D.I. 14. However, VGW Group did not learn of this lawsuit until on or about April 23, 2024. Since the Clerk's entry of default, Plaintiff has sought limited third-party discovery, ostensibly for the purpose of bringing a motion for default judgment. D.I. 27 at 4. Plaintiff has not filed a motion for default judgment. Pursuant to this Court's April 26, 2024, order (D.I. 29), Plaintiff filed a status report on May 10, 2024, regarding its discovery efforts and other activity (D.I. 30). No other deadlines have been set in this case and no other activity has occurred.

## SUMMARY OF ARGUMENT

1. Rule 55(c) authorizes this Court to "set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). There is good cause to set aside the Clerk's entry of default here.

2. *First*, Plaintiff will not be prejudiced if the entry of default is vacated because there has been little to no progress in this case since the entry of default, and Plaintiff would simply have to litigate and resolve the case on the merits as it would in the normal course.

3. *Second*, VGW Group has meritorious defenses: Plaintiff cannot establish its claims, as it has no ownership or valid trademark over the words "Lucky Duck" or depiction of a duck, and Plaintiff cannot prove any likelihood of confusion.

1

4.  *Third*, VGW Group is not culpable because it was unaware this lawsuit existed until on or about April 23, 2024, and upon discovering this lawsuit has taken action immediately.

## STATEMENT OF FACTS

On January 31, 2023, Plaintiff filed this action against VGW Group. VGW Luckyland and VGW Holdings are Delaware corporations. *See* Verified Complaint for Injunction and Damages ("Compl.") ¶¶ 2-3; *see also* Declaration of Michael Thunder ("Thunder Decl.") ¶ 3. VGW Group specializes in the development and publication of online casino-themed social games, including games on the platform called *Luckyland Slots*. *See* Thunder Decl. ¶ 4. Plaintiff alleges that several *Luckyland Slots* games, including *Lucky Duck*, *Duck and Roll*, and *Lucky Duck Instant WIN!*, infringe Plaintiff's alleged trademark in violation of trademark and unfair competition laws.

Service was apparently attempted on VGW Group by delivering various filings to CT Corporation System ("CTC") as VGW Group's registered agent on February 3, 2023, and copies of the return executed summons were filed on February 6, 2023. *See* D.I. 7-8. VGW Group has no records of receiving copies of the summons, complaint, or any other filings in this lawsuit from CTC. *See* Thunder Decl. ¶ 7. VGW Group experienced difficulties with services provided by CTC during that period and, in October 2023, appointed another registered agent. *Id.* On March 8, 2023, the Clerk entered a default against VGW Group pursuant to Rule 55(a), based on VGW Group's failure to respond to the Complaint (of which VGW Group was unaware). D.I. 14.

VGW Group did not become aware of the existence of this lawsuit until on or around April 23, 2024. *See* Thunder Decl. ¶ 5. On that date, VGW Group learned of this lawsuit after its counsel discovered it and subsequently notified VGW Group. *Id.* Upon discovering this action, VGW Group acted immediately: VGW Group instructed its outside counsel to contact Plaintiff's counsel to discuss the matter and retained the undersigned as its local counsel. *See* D.I. 30.

2

Plaintiff has not filed a motion for default judgment to date. Instead, on April 5, 2023, the Court permitted Plaintiff to conduct limited non-party discovery, which apparently remains ongoing. *See* D.I. 16, 30. At no point during this discovery did VGW Group receive notifications about this lawsuit from Plaintiff or any of the non-parties from which Plaintiff has attempted to propound discovery. *See* Thunder Decl. ¶ 8.[1]

## LEGAL STANDARD

Default judgments are disfavored because they prevent claims from being decided on the merits. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984). Indeed, any doubts are "to be resolved in favor of the party moving to set aside the default." *Id.* at 195. Under Rule 55(c), a "court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). The decision to set aside a default is left to the discretion of the district court. *Mayhan v. Sunoco, Inc.*, 2019 WL 2994548, at *1 (D. Del. July 9, 2019) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 194). Courts consider the following factors when assessing whether good cause to set aside an entry of default exists: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. *See Miles v. Aramark Correctional Serv.*, 236 F. App'x 746, 751 (3d Cir. 2007).

## ARGUMENT

Good cause exists to set aside the entry of default under Rule 55(c) because Plaintiff will not be prejudiced if the default is vacated (*see infra* at I), VGW Group has meritorious defenses (*see infra* at II), and VGW Group has not acted willfully or in bad faith (*see infra* at III).

---

[1] VGW Group reserves all rights to dispute the propriety of Plaintiff's limited non-party discovery, including its subpoenas to Barclays Bank Delaware and Fifth Third Bank, as VGW Group was unaware of this case when Plaintiff moved to conduct limited non-party discovery on April 4, 2023 (D.I. 15), and thus was unable to object to such discovery.

I.       **Plaintiff Will Not Be Prejudiced If the Entry of Default Is Vacated**

Plaintiff will not be prejudiced if the Clerk's entry of default is vacated. Nothing has occurred in the proceedings to date that has hindered Plaintiff's ability to pursue its claims. To claim prejudice in simply being required to do what the law requires—prove its claims—seems perverse where, as here, there is no evidence of any effort by VGW Group to evade these proceedings. *See, e.g., Int'l Brotherhood of Elec. Workers, Loc. Union No. 313 v. Skaggs*, 130 F.R.D. 526, 529 (D. Del. 1990) (no prejudice where party objecting to set aside of default would merely be required to litigate the lawsuit, and "nothing has occurred since the entry of the default which in any way has hindered his ability to pursue his" claims). In addition, delay in realizing satisfaction on a claim rarely serves to establish prejudice sufficient to prevent the vacating of a default. *See Girafa.com, Inc. v. Smartdevil Inc.*, 728 F. Supp. 2d 537, 544 (D. Del. 2010). Indeed, to show prejudice here, Plaintiff would need to demonstrate that setting aside the entry of default would result in "loss of available evidence [or] increased potential for fraud or collusion," or that it has "substantial[ly] reli[ed] upon the entry of default." *Id.* Plaintiff can show none of these.

Here, while default was entered on March 8, 2023, there has been little to no progress by Plaintiff or any other activity in this case since default was entered. *Id.* at 544 (finding no prejudice even where motion to set aside default was filed over two years after entry of default). There is no allegation that evidence has been lost, nor will setting aside the default increase the potential for fraud or collusion, as VGW Group was unaware of this lawsuit until a few weeks ago. Moreover, VGW Group has evidenced its willingness to appear and to contest Plaintiff's claims through the alacrity with which it has responded as soon as it became aware of this case. Lastly, Plaintiff has not relied on the entry of default in any way. Plaintiff has not moved the Court for a default judgment. In fact, as this Court recognized on April 26, 2024, Plaintiff has "made little effort and little progress on its damages investigation" since entry of default. *See* D.I. 29, 30.

4

**II.     VGW Group Has Meritorious Defenses and Should Not Be Deprived of the Opportunity for these Defenses to Be Weighed by the Court**

"Rule 55 does not require the defaulting party 'to prove beyond a shadow of a doubt that [it] will win at trial, but merely to show that [it has] a defense to the action which at least has merit on its face.'" *Girafa.com, Inc.*, 728 F. Supp. 2d at 545 (alteration in original) (citation omitted). VGW Group has multiple meritorious defenses that, "if established on trial, would constitute a complete defense to the action." *J Supor & Son Trucking & Riggins Co., Inc. v. Kenworth Truck Co.*, 791 F. App'x 308, 315 (3d Cir. 2019) (citations and quotations omitted).

**A.     Plaintiff Cannot Establish Trademark Infringement or Likelihood of Confusion (Counts I, II, III.b.,[2] V, and VI)**

Plaintiff's claims for federal and common law trademark infringement, federal and common law unfair competition, and violations of the Delaware Deceptive Trade Practices Act ("DDTPA") are all assessed under the same standard. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) (Third Circuit "measure[s] federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards"); *Chase Manhattan Bank, USA, N.A. v. Freedom Card, Inc.*, 333 F. Supp. 2d 239, 251 (D. Del. 2004) (dismissing Lanham Act and common law trademark and unfair competition claims under same standard); *Mil. Certified Res. Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 757 (D. Del. 2017) ("Courts reviewing DDPTA [*sic*] violations apply the same standards as they apply to trademark infringement claims.").[3] To establish a claim

---

[2] Plaintiff lists two separate Count IIIs: (1) "COUNT III – DILUTION OF FAMOUS MARK" and (2) "COUNT III – VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT, 6 DEL. C. § 2531, ET SEQ." *See* Compl. 10-11. VGW Group will refer to Plaintiff's Dilution claims as "Count III.a." and Plaintiff's Deceptive Trade Practices Act claims as "Count III.b."

[3] Plaintiff asserts that VGW Group violated the DDTPA by "pass[ing] off goods as those of another," "caus[ing] a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services," and "implicitly represent[ing] that

for trademark infringement or unfair competition, Plaintiff would need to prove that: (1) its asserted marks are valid; (2) Plaintiff owns those marks; and (3) VGW Group's accused use is likely to cause consumer confusion concerning the origin of the goods. *A & H*, 237 F.3d at 210.

1. **Ownership & Validity**

*First*, Plaintiff cannot prove (and has not adequately pled) the validity of any claimed rights in the term "lucky duck" or the use of an image of a duck alone in connection with any goods or services.[4]  The only mark Plaintiff asserts it has registered with the United States Patent and Trademark Office is the design mark pictured below (the "Asserted Lucky Duck Design Mark"):



*See* Compl. ¶ 11; Compl. Exhibit A.  The description of the mark included in the asserted registration is "a picture of a duck with the words 'LUCKY DUCK' in front of the duck."  *See*

---

goods or services provided by or through Defendants have sponsorship, approval, authorization, status or qualities that they do not have," or "creat[ing] a likelihood of confusion or of misunderstanding with respect to the Plaintiff's involvement with Defendants' sale of goods." Compl. ¶ 85.  These allegations are nothing more than conclusions of law that parrot the standards for federal unfair competition.  *See*, *e.g.*, 15 U.S.C. § 1125(a)(1) ("Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to **cause confusion**, **or to cause mistake, or to deceive as to the affiliation, connection, or association** of such person with another person, **or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person**") (emphases added).

[4] While Plaintiff defines its mark by citing to its trademark registration (Compl. ¶ 11), it repeatedly refers to alleged infringement based on use of (1) the words "Lucky Duck," which is "similar to the literal element of Epic Tech's LUCKY DUCK Mark" or (2) "duck images" that are allegedly "similar to the graphical element of Epic Tech's LUCKY DUCK Mark."  *See* Compl. ¶¶ 51, 52; *see also id.* ¶ 59 (discussing "use [*sic*] the words 'Lucky Duck' and/or imagery"), ¶ 65, 66.

Compl. Exhibit A.  A trademark registration of a composite mark like the Asserted Lucky Duck Design Mark "affords *prima facie* rights in the mark *as a whole*, not in any component." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1564 (Fed. Cir. 1987) (emphasis in original) (citation omitted); *see also In re Bose Corp.*, 772 F.2d 866, 873 (Fed. Cir. 1985) ("Bose's rights in the protectability of its registered mark rest on the distinctiveness of the entirety of that design, not individual features thereof"); *In re Save Venice New York, Inc.*, 259 F.3d 1346, 1353 (Fed. Cir. 2001) ("A registered mark is incontestable only in the form registered").  That is, the only mark afforded a presumption of validity is the mark shown above: a particular depiction of a duck with the words "LUCKY DUCK," stylized in a particular font, in front of the image.

To the extent Plaintiff claims rights in the individual words "lucky duck" or in duck imagery in connection with specific goods or services, it needs to plead and prove those rights. Among other things, Plaintiff will be required to show these alleged marks (a phrase that simply refers to someone with good luck and an image of a rubber duck) are each "distinctive." *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 230 (3d Cir. 2017) ("A valid and legally protectable mark must be 'distinctive,'" either through inherent distinctiveness or acquired distinctiveness).  But Plaintiff has not even **pled** distinctiveness.  *See* Compl. (never alleging "LUCKY DUCK" and duck imagery are each distinctive, only referring to the Asserted Lucky Duck Mark's undefined "distinctive quality" in ¶¶ 78, 81, and Prayer for Relief ¶ (a)(3), discussing dilution and failing to allege secondary meaning).  Any asserted claim based on those constituent elements thus fails.

**Second**, while Plaintiff attempts to expand the scope of its alleged rights by referencing its alleged subsidiary's "Lucky Duck Slots" mobile device game, "[a] registered mark is incontestable only in the form registered **and for the goods or services claimed**." *In re Save Venice New York, Inc.*, 259 F.3d at 1353 (emphasis added).  "A registered mark on goods other than those previously

7

registered carries no presumption of distinctiveness." *Id.* Reg. No. 3,853,565 only claims the goods "[g]aming equipment, namely ***gaming machines***." *See* Compl. Exhibit A (emphasis added). It ***does not*** claim mobile games, website games, or any other goods. Indeed, the design used in connection with the "Lucky Duck Slots" game is not even the same design Plaintiff registered:

| Reg. No. 3,853,565 | Lucky Duck Slots[5] |
|---|---|
| (Lucky Duck design) | (Lucky Duck Slots design) |

To the extent Plaintiff is now claiming trademark rights in a wider variety of goods or in a different design than the one it registered, it bears the burden of proving those rights. Again, it has not even pleaded them. *See* Compl. (not alleging distinctiveness in any mark applied to mobile games).[6]

### 2. Likelihood of Confusion

In determining whether there is a likelihood of confusion, courts in this Circuit balance ten factors, including "(1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised

---

[5] *See* Compl. Exhibit B.

[6] VGW Group believes there are also likely colorable challenges to continued use of the Asserted Lucky Duck Design Mark based on Plaintiff's thin pleadings. *See, e.g.*, Compl. ¶¶ 17, 19 (describing "deployment" of the game and "use[] on gaming machine consoles" but not explicitly pleading any sales in the last four years).

8

through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; [and] (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market." *A & H Sportswear*, 237 F.3d at 215.

Balancing these factors, Plaintiff will not be able to prove any alleged use by VGW Group is likely to cause confusion with Plaintiff's asserted registered trademark.[7] As just a few examples:

- **Degree of Similarity:** The Asserted Lucky Duck Design Mark and VGW Group's "Lucky Duck" icons have notable differences, including, for example, the use of different fonts, ducks rendered in different styles, and the amount and type of detailing included:

| Reg. No. 3,853,565 | VGW Group's Accused Uses (Compl. Exs. E, F) |
|---|---|
| [Lucky Duck logo image] | [Two Lucky Duck icon images] |

---

[7] As discussed above, to the extent Plaintiff is asserting any other marks (the Complaint does not clearly assert any other marks despite attempts to allege infringement based on the use of "Lucky Duck" and duck imagery standing alone), Plaintiff would bear the burden of proving that those marks are valid before it would be necessary to address likelihood of confusion created by any purported trademark use by Defendants. And any assertion of likelihood of confusion based on use of the phrase "Lucky Duck" or a duck image standing alone will be even more difficult to prove since those uses are even further away from the Asserted Lucky Duck Design Mark.

9

The uses are also presented in very different commercial contexts. While the Asserted Lucky Duck Design Mark appears on physical slot machines (Compl. ¶ 18), VGW Group's allegedly infringing uses appear on its website games (*see, e.g.*, Compl. Exhibits E, F).

- **Strength of the Asserted Mark:** One type of strength is commercial strength, which "focuses on factual evidence of recognition in the marketplace." *R.J. Ants, Inc. v. Martinelli Enters.*, 771 F. Supp. 2d 475, 493 (E.D. Pa. 2011). "[E]vidence of third party uses of a plaintiff's mark is indicative of the mark's lack of commercial strength in the marketplace and its conceptual commonality." *Id.* at 494. There are numerous third-party combining variants of "luck," "duck," and duck imagery used in connection with games of chance, including:



https://www.facebook.com/LuckyDuckSlots.760



https://www.aristocratgaming.com/us/slots/games/lucky-ducky



https://www.slotozilla.com/free-slots/duck-of-luck



https://medium.com/@williamjohns81056/play-lucky-duck-slot-game-902596ff5f7c

10



https://www.slotstemple.com/free-slots/lucky-duck/



https://m.facebook.com/HitItRichSlots/photos/youre-waddling-out-of-time-to-complete-lucky-ducky-slotventure-complete-it-now-f/3767298486678146/

The consequence of such third-party use is that any rights Plaintiff may have in the Asserted Lucky Duck Design Mark are exceedingly weak, and accordingly any differences between Plaintiff's mark and Defendants' "Lucky Duck" icon weigh more heavily in favor of a finding of no likelihood of confusion.

- **Actual Confusion:** The failure to prove any evidence of actual confusion "weighs significantly against a finding of likelihood of confusion." *Chase Manhattan Bank*, 333 F. Supp at 249-50. The Complaint alleges that VGW Group's alleged uses have co-existed with the Asserted Lucky Duck Design Mark for over six years (Compl. ¶¶ 42-43, alleging VGW Group's use of "Lucky Duck" and duck imagery since August 2018), but does not cite to *any* examples of actual confusion. *See generally* Compl. The absence of any instances of actual confusion for over six years strongly weighs against finding a likelihood of confusion.

Even absent the aid of any discovery, which VGW Group expects will provide evidence to support differences in the marketing and channels of trade, the price of the goods at issue, the relationship of the goods in the minds of consumers and the consumers targeted by the parties in their sales efforts—in addition to VGW Group's good faith intent in adopting their "Lucky Duck"

icon—analysis of Plaintiff's claims based solely on its pleadings shows that VGW Group possesses valid arguments that no likelihood of confusion exists.

As established above, VGW Group has meritorious defenses—on both ownership and validity and likelihood of confusion—to Counts I, II, III.b., V, and VI of Plaintiff's Complaint.

### B.   Plaintiff Cannot Establish Trademark Dilution (Count III.a.)

Plaintiff's claim of Dilution of a Famous Mark (Count III.a.) is implausible on its face. The dilution statute is intended to restrict that cause of action to truly famous marks. Determining whether the asserted mark is "famous" is a "threshold question" in any dilution claim under the Lanham Act. *See, e.g., Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1372 (Fed. Cir. 2012). "Famous" marks are "widely recognized by the ***general consuming public of the United States*** as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A) (emphasis added). That is—it is not enough for the mark to be famous among consumers who purchase gaming machines, the mark needs to be "a household name." *See Coach Servs.*, 668 F.3d at 1373. "It is well-established that dilution fame is difficult to prove." *Id.* at 1373 (internal citations omitted). Examples of "famous" marks include "Budweiser beer, Camel cigarettes, Barbie Dolls . . . Nike and Mattel's Hot Wheels." *Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 430 (S.D.N.Y. 2022) (citations and quotations omitted).

Indeed, Plaintiff did not plead sufficient facts to show that the Asserted Lucky Duck Design Mark is famous. Plaintiff merely states that the Asserted Lucky Duck Design Mark is registered and claims that it is "famous and is widely known and recognized throughout the general public" (Compl. ¶ 20), without alleging any facts to support fame, such as (1) the length and extent of advertising and publicity of the mark; (2) volume of sales of goods offered under the Asserted Lucky Duck Design Mark; or (3) specific facts showing wide reaching access to and recognition of the mark. *See generally* Compl.; 15 U.S.C. § 1125(c)(2)(A) (listing factors relevant to

establishing fame); *see also Walker Wear*, 624 F. Supp. 3d at 430-31 (plaintiff failed to plead that its marks were famous, including because it failed to "plead any information about [its] advertising budget," only generally pleaded that it "invested substantial time and money" in the marks without specifics, and did not plead any evidence of actual recognition of the mark). Nor could it. It is simply implausible to suggest that the Asserted Lucky Duck Design Mark is recognized in households throughout America in the same ways as "Coca-Cola, Nike, or Budweiser." *Id.* at 430.

### C. Plaintiff's Claim under the Delaware Consumer Fraud Act Fails Because Plaintiff Fails to Plead Misrepresentations (Count IV)

Plaintiff claims that VGW Group violated the Delaware Consumer Fraud Act ("DCFA") by "misrepresent[ing] to the consuming public in Delaware that its products has [*sic*] an affiliation with or is endorsed by Plaintiff" (Compl. ¶ 93) but fails to actually allege ***any*** misrepresentation, and certainly fails to do so with the particularity required by Rule 9(b). Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Courts have applied this requirement to the DCFA. *See, e.g.*, *Eames v. Nationwide Mut. Ins. Co.*, 412 F. Supp. 2d 431, 438 (D. Del. 2006) (citing *Crowhorn v. Nationwide Mut. Ins. Co.*, No. Civ.A.00C–06–010, 2002 WL 1767529, at *9 (Del. Super. Ct. July 10, 2002) (applying the particularity requirement to a claim under the DCFA)); *see also Williams v. Progressive Direct Ins. Co.*, 631 F. Supp. 3d 202, 207 (D. Del. 2022) ("Claims under the Act must still be pleaded with particularity under Rule 9(b).").

Plaintiff alleges generally that (1) "Defendants misrepresent to the consuming public in Delaware that its products has [*sic*] an affiliation with or is [*sic*] endorsed by Plaintiff" and (2) "Consumers were or could have been misled, deceived and/pr [*sic*] damaged based on the misrepresentations that the products were affiliated with or endorsed by Plaintiff when deciding to purchase Defendants' product, and therefore Plaintiff suffered damages as a result." Compl. ¶¶ 93-

94. But Plaintiff fails to identify any "misrepresentations that the products were affiliated with or endorsed by Plaintiff," no less the circumstances surrounding those alleged "misrepresentations." Plaintiff merely alleges that VGW Group's use of its "Lucky Duck" icon, and the phrase "LUCKY DUCK" and an image of a duck—two individual elements in which Plaintiff does ***not*** assert it holds trademark registrations—in connection with VGW Group's website games infringes Plaintiff's Asserted Lucky Duck Design Mark; none of this identifies any ***misrepresentations*** that VGW Group has allegedly made. Moreover, given that Plaintiff's sole basis for its fraud claim appears to rest on its trademark infringement allegations,[8] since those claims fail for the reasons set out above, so must this claim.

* * *

The above includes only a few examples of VGW Group's meritorious defenses. VGW Group should not be deprived of the opportunity to defend itself on the merits.

### III.     VGW Group Is Not Culpable Because It Was Unaware of this Action and Thus Missed the Deadline to Respond to the Complaint

For a default to stand, culpable conduct is required. "[C]ulpable conduct means actions taken willfully or in bad faith." *Mayhan*, 2019 WL 2994548, at *4 (no culpable conduct where movant promptly took action after learning of the default) (citing *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983)). "Neglect alone cannot sustain a default judgment."

---

[8] Plaintiff asserts that VGW Group violated the DCFA by "misrepresent[ing] to the consuming public in Delaware that its products has [*sic*] an affiliation with or is endorsed by Plaintiff" (Compl. ¶ 93), an allegation which tracks the standard for federal unfair competition. *See* 15 U.S.C. § 1125(a)(1) ("Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the ***affiliation***, connection, or association of such person with another person, or as to the origin, ***sponsorship***, or approval of his or her goods, services, or commercial activities by another person") (emphases added).

14

*Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984).  VGW Group is not culpable here because it never had actual notice that this lawsuit was proceeding.  Before April 23, 2024, it had not received copies of the summons, complaint, or any other filing in this action.  Thunder Decl. ¶ 6.  Nor does it have records of receiving notice of the acceptance of process by its then-registered agent CTC.  *Id.* ¶ 7.  VGW Group was unaware of this lawsuit until April 23, 2024, and did not take any willful or bad faith action to avoid responding.  *Id.* ¶ 5; *see, e.g., Skaggs*, 130 F.R.D. at 529 (no culpable conduct where delay in responding to complaint was the result of mere inadvertence, not willful conduct).  In fact, upon first learning of this suit, VGW Group expediently retained local counsel, contacted Plaintiff's counsel, and prepared this motion.  *See* D.I. 29, 30.

This Court's decision in *Purnell v. Delaware Dept. of Ins.*, 2022 WL 610701 (D. Del. Feb. 25, 2022), is particularly instructive.  Like VGW Group, a company moved to set aside the entry of default on the ground that it was unaware that a lawsuit had been filed for various reasons.  *Id.* at *4.  As here, the company's registered agent had apparently accepted service of process, but the company had no record of receiving mailed service.  *Id.*  This Court set aside the entry of default, reasoning as follows: "Cases where courts have found a lack of culpability 'typically involved innocent mishaps or mere mistakes.'  The record reflects that [the company] was unaware of the lawsuit and, when it discovered its existence, took immediate action."  *Id.* (citations omitted).

So, too, here.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request this Court set aside the entry of default entered by the Clerk in this action, and grant Defendants leave to file a responsive pleading within 30 days of granting this motion.

15

|  |  |
|---|---|
| | Respectfully submitted, |
| | /s/ Andrew E. Russell |
| OF COUNSEL: | John W. Shaw (No. 3362) |
| Behnam Dayanim | Karen E. Keller (No. 4489) |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | Andrew E. Russell (No. 5382) |
| 2100 Pennsylvania Avenue NW | SHAW KELLER LLP |
| Washington, D.C. 20037 | I.M. Pei Building |
| (202) 339-8400 | 1105 North Market Street, 12th Floor |
| | Wilmington, DE 19801 |
| Gregory Beaman | (302) 298-0700 |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | jshaw@shawkeller.com |
| 51 West 52nd Street | kkeller@shawkeller.com |
| New York, NY 10019-6142 | arussell@shawkeller.com |
| (212) 506-5000 | *Attorneys for VGW Luckyland, Inc. and VGW Holdings US, Inc.* |
| Sarah Shyy | |
| ORRICK, HERRINGTON & SUTCLIFFE LLP | |
| 2050 Main Street | |
| Suite 1100 | |
| Irvine, CA 92614-8255 | |
| (949) 567-6700 | |

Dated: May 15, 2024