IN THE UNITED STATES COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EPIC TECH, LLC, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:23-cv-0118-RGA |
| | ) | |
| VGW LUCKYLAND, INC. and | ) | |
| VGW HOLDINGS US, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

**FIRST AMENDED COMPLAINT FOR INJUNCTION AND DAMAGES**

Plaintiff Epic Tech, LLC ("Epic Tech" or "Plaintiff") files this First Amended Complaint for Injunction and Damages ("Complaint") against Defendants VGW Luckyland, Inc. and VGW Holdings US, Inc. (collectively, "Defendants") and shows as follows:

**JURISDICTIONAL ALLEGATIONS**

1.  Plaintiff Epic Tech, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 55 Pearson Way, Suite E, Lavonia, Georgia 30553.

2.  Defendant VGW Luckyland Inc. ("Luckyland") is a corporation organized under the laws of the State of Delaware. Luckyland may be served by service on its registered agent in Delaware.

3.  Defendant VGW Holdings US, Inc. ("Holdings") is a corporation organized under the laws of the State of Delaware. Holdings may be served by service on its registered agent in Delaware.

4.  This Court has subject matter jurisdiction pursuant to, amongst other bases, 15 U.S.C. § 1051 *et seq.* (the Lanham Act), 28 U.S.C. § 1331, and 28 U.S.C. § 1338(b).

1

5.      Specifically, this Court has subject matter jurisdiction over the Federal claims pursuant to 28 U.S.C. § 1331(a) (original jurisdiction in trademark cases) and 15 U.S.C. § 1114 *et seq.* (the Lanham Act).

6.      Defendant Luckyland is a Delaware corporation and is subject to personal jurisdiction in the State of Delaware.

7.      Defendant Holdings is a Delaware corporation and is subject to personal jurisdiction in the State of Delaware.

8.      Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. § 1391(b)(1).

## FACTS

9.      Epic Tech is a business engaged in the design, development, manufacture, operation, distribution, and sale and lease of proprietary computer gaming hardware and software.  Epic Tech's proprietary gaming hardware and software products are sold and leased throughout the United States and the world, and are used in a variety of locations to conduct gambling games (where permitted by law), social casino games, and other sorts of gaming entertainment.

10.     One of the many gaming software titles distributed and sold by Epic Tech is "Lucky Duck."

11.     Epic Tech's predecessor-in-interest, Gateway Gaming, Inc. ("Gateway") filed an application for protection of the image mark (which contains the literal element "LUCKY DUCK") (the "Image Mark") on or about March 9, 2010.  On or about September 28, 2010, the Mark was duly registered by the United States Patent and Trademark Office ("USPTO") under Registration No. 3853565.  A true and correct copy of the registration with the USPTO is attached hereto as Exhibit A.

12. On or about September 17, 2014, the registration for LUCKY DUCK was assigned to Gateway's wholly owned subsidiary Epic Tech.

13. As is set forth in the application and registration materials, Epic Tech has used the Image Mark on "Gaming equipment, namely gaming machines in Class 9."

14. Epic Tech timely filed declarations of use and incontestability for the Image Mark on October 5, 2015 and July 27, 2020.

15. On November 27, 2015, the USPTO acknowledged Epic Tech's continuing use of the Image Mark as incontestable.

16. As is set forth in the application and registration materials associated with the Mark, Epic Tech (and its predecessors-in-interest) has continuously used the Image Mark in commerce since April 1, 2007.

17. The Image Mark is currently used on gaming machine consoles in use throughout the United States.

18. The Image Mark is displayed on the physical cabinet of the game as well as displayed on the screen by the software that is the actual game.

19. In the United States since 2010, Epic Tech's Lucky Duck game has been deployed and used in nearly 1400 different locations.

20. The LUCKY DUCK Image Mark is famous and is widely known and recognized throughout the general public.

21. Epic Tech also owns extensive common law rights to the word mark "LUCKY DUCK," (the "Word Mark") which has been in continuous, open, and notorious use in the United States with the earliest use dating back to 2010.

22. The Epic Tech Marks are recognized by the owners and operators of locations where the video game is deployed as a high-quality video gaming product produced by Epic Tech.

23. The Epic Tech Marks are also recognized by the patrons of locations where the video game is deployed who wager or otherwise pay to use the Lucky Duck game at those locations.

24. Epic Tech's wholly owned subsidiary, Big Frog Games, LLC ("Big Frog") has developed a free-to-play social casino game titled "Lucky Duck Slots," which is available to be downloaded and played on mobile devices.

25. The Lucky Duck Slots mobile application makes extensive use of the Word Mark and also uses an image mark which is a variation of the Image Mark and is composed of a yellow duck and the words, "LUCKY DUCK" (the "Mobile Mark").

26. Epic Tech also owns extensive common law rights in the Mobile Mark.

27. The Big Frog Lucky Duck Slots game was released on the Google Play Store on or about March 12, 2014.

28. The Big Frog Lucky Duck Slots game was released on the Apple App Store on or about February 7, 2014.

29. A true and correct copy of the Google Play Store page for Big Frog's Lucky Duck Slots is attached hereto as Exhibit B.

30. A true and correct copy of the Apple App Store page for Big Frog's Lucky Duck Slots is attached hereto as Exhibit C.

31.     The Image Mark and the Word Mark have been in continuous, open, and notorious use in the United States with the earliest use dating back to 2007 in connection with Epic Tech's "Lucky Duck" gaming hardware and software.

32.     The Word Mark, and the Mobile mark have been in continuous, open, and notorious use in the United States in connection with the "Lucky Duck Slots" mobile gaming application, with the earliest use dating back to 2014.

33.     The Image Mark, the Word Mark, and the Mobile Mark (collectively, the "Epic Tech Marks") have not been abandoned.

34.     As a result of Epic Tech's long, extensive, and exclusive use of the Epic Tech Marks, and as a result of its sales of substantial amounts of video gaming hardware and software that use and display the Epic Tech Marks and promote Epic Tech's goods and services, the Epic Tech Marks have come to be associated in the public mind solely with Epic Tech and its goods and services.  Accordingly, Epic Tech has built up valuable trademark rights, and the Epic Tech Marks have become invested with substantial goodwill and customer recognition.

35.     Further, consumers recognize Epic Tech and the Epic Tech marks as indicators of excellence, and as uniquely identifying Epic Tech as the source of the products and services associated in connection with which they are used.

## DEFENDANTS' INFRINGING CONDUCT

36.     Defendants operate a website at the URL luckylandslots.com (the "Website").

37.     The terms of service for the Website describe it as an "online social game."

38.     A true and correct copy of the Website's Terms of Service (the "TOS") is attached hereto as Exhibit D.

39.     Defendants have optimized the Website to be accessed and used by regular computers as well as mobile devices such as smartphones and tablets.

40. The Website allows players to play various simulated slot-machine and other casino games using two different forms of virtual currency, "Gold Coins," and "Sweeps Coins."

41. The TOS defines "Gold Coins" as "the virtual social currency which enables you to play Standard Play Games.  Gold Coins have no monetary value and cannot under any circumstances be redeemed for prizes."

42. The TOS defines "Sweeps Coins" as "sweepstakes entries subject to the Sweeps Rules.  We may give you Sweeps coins free of charge when you sign up to a Platform, as a bonus when you purchase Gold Coins or via each of our free alternative methods of entry as set out in the Sweeps Rules.  You may win more Sweeps Coins when you play Promotional Play Games.  YOU CANNOT PURCHASE SWEEPS COINS."

43. The rules for the Sweepstakes operated by Defendants (the "Sweeps Rules") purport to allow players, including players in the United States, to wager their Sweeps Coins via the Website with the possibility of winning a prize that Defendants will pay out in cash.

44. As of the date of this Complaint, Defendants' Website has approximately ninety different (90) game titles that players can select to play.

45. Included in these titles are "Lucky Duck," "Duck and Roll," and "Lucky Duck Instant WIN!".

46. True and correct copies of the Defendants' Website showing each of the titles identified in Paragraph 45 are attached hereto as Exhibits E, F, and G.

47. Defendants make extensive use of the words "Lucky Duck" on the Website and in their e-mail and social media marketing advertising the Website.

48. Defendants make extensive use of the image of a duck that is similar to that depicted in Epic Tech's Image Mark in their e-mail and social media marketing advertising the Website.

49. Defendants' use of the image of a duck that is similar to that depicted in Epic Tech's Image Mark occurs with and without the use of the term "Lucky Duck."

50. True and correct samples of Defendants use of the words "Lucky Duck" and/or the image of a duck similar to the Mark are attached hereto as Exhibit H.

51. Upon information and belief, Defendants initially launched the Website in or around August 2018.

52. Upon information and belief, Defendants have used the words, "Lucky Duck" as well as an image of a duck similar to the Image Mark and the Mobile Mark on the Website and in their marketing materials for the Website since August 2018.

53. Defendants have used (and are continuing to use) the "Lucky Duck" name and images similar to the Image Mark and the Mobile Mark in connection with the social and sweepstakes games on the Website and in marketing materials for the Website.

54. Defendants' Website generates significant revenue for Defendants by the sale of virtual currency by users of the Website.

XXX

55. Defendants are using the Word Mark and a substantially-similar version of the Image Mark and Mobile Mark in commerce.

56. Defendants infringing products and services are substantially similar to Epic Tech's products and services. Accordingly, upon information and belief, Defendants have distributed, offered for sale, and sold, or attempted to distribute, offer for sale, and sell, goods

and services using the Epic Tech Marks through the same channels of trade and directed towards the same types and classes of purchasers, as Epic Tech.

57. The marks used by Defendants are identical or substantially or highly similar to Plaintiff's Epic Tech Marks in sound, appearance, and commercial impression, and Defendants use of the Epic Tech Marks with their goods and services are likely to cause confusion, deception, and/or mistake among the relevant public.

58. In light of the similarity of the "Lucky Duck" mark (and related images) used by Defendants to the Epic Tech Marks and the similarity of the parties respective goods and services, channels of trade, and target purchasers and users (among other factors), many actual and prospective purchasers who encounter Defendants' "Lucky Duck" mark (and related images) are likely to think that Defendants' goods and services offered in connection with the Epic Tech Marks are authorized by, sponsored by, licensed by, or affiliated with Epic Tech, or that Defendants' goods and services are the same or otherwise related. Accordingly, Defendants' "Lucky Duck" mark, when used in conjunction with Defendants' goods and services, is likely to cause confusion, mistake, or deceive as to the origin, source, sponsorship, or affiliation of Defendants' goods and services within the meaning of 15 U.S.C. § 1052(d).

59. For these reasons, Defendants' use of the Epic Tech Marks is causing and/or has been causing damage to Epic Tech, its business, and its goodwill.

60. Each of the Epic Tech Marks has priority over the Defendants' marks because Plaintiff's use of the Epic Tech Marks in connection with Plaintiff's goods and services is prior to: (a) Defendants' use of the "Lucky Duck" mark (and related images) in connection with Defendants' goods and services and (b) any other date that may be lawfully claimed by Defendants.

61. Epic Tech first became aware of games on Defendants' Website titled "Lucky Duck" in or around August 2022.

62. On August 31, 2022, counsel for Epic Tech sent a cease-and-desist letter (the "C&D Letter") to the respective registered agents for each Defendant in Delaware and California, demanding that Defendants immediately cease and permanently desist from any further use of any words and/or images that are identical or similar to the Epic Tech Marks.

63. A true and correct copy of the August 31, 2022 C&D Letter is attached hereto as Exhibit I.

64. Defendants (via their registered agents) received the copies of the C&D letter on or about September 6 and 7, 2022.

65. True and correct copies of the delivery receipts for the copies of the C&D letters are attached hereto as Exhibit J.

66. The Defendants' use of the "Lucky Duck" title for their online simulated slot machine games is identical to Epic Tech's Word Mark.

67. The duck images used by Defendants in conjunction with: (a) their marketing and operation of their for online social casino website, and (b) the games available on the Website are substantially similar to the graphical elements of Epic Tech's Image Mark and Mobile Mark.

68. Defendants use and infringement of the Epic Tech Marks was and is willful.

69. Defendants' use and infringement of the Epic Tech Marks was undertaken with the goal and intention of capitalizing on the good will and recognition of the Epic Tech Marks.

70. Defendants were, at all times, aware of the illegal nature and consequences of their infringement.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114

71. Epic Tech repeats and realleges the allegations contained in prior paragraphs as if fully set forth therein.

72. The Image Mark is a valid and protectable trademark.

73. Epic Tech is the owner of the Image Mark.

74. Epic Tech's registration for the Image Mark is in full force and effect, and has never been abandoned.

75. Epic Tech intends to continue to preserve and maintain its rights with respect to its registration of the Image Mark.

76. Epic Tech's Image Mark and the goodwill associated therewith are of inestimable value to Epic Tech.

77. Defendants, without Epic Tech's permission or consent, have used and are continuing to use the Image Mark in connection with the use, sale, offering for sale of video gaming software and services which are substantially similar to Epic Tech's goods and services.

78. Defendants' use of the Image Mark in commerce constitutes trademark infringement in violation of 15 U.S.C. § 1114, in that, among other things, such use is likely to cause confusion, deception, and mistake among the purchasing public as to the source, approval, or sponsorship of the goods bearing or associated with the Image Mark.

79. Defendants' acts are knowing and intentional, as Defendants are on notice of Epic Tech's valuable trademark rights and have willfully and intentionally refused to cease and desist in the use of the Image Mark despite receipt of a cease and desist notice from Epic Tech as early as August 31, 2022, rendering this an exceptional case under 15 U.S.C. § 1117(a).

80. Such conduct on the part of Defendants has injured and will continue to injure Epic Tech in an amount to be determined at trial, and has directly and proximately caused and threatens to cause irreparable injury to Epic Tech for which Epic Tech has no adequate remedy at law.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN**
**IN VIOLATION OF 15 U.S.C. § 1125(A)**

81. Epic Tech repeats and realleges the allegations contained in prior paragraphs as if fully set forth therein.

82. Epic Tech is the owner of the Epic Tech Marks.

83. Defendants' actions in using the Epic Tech Marks in interstate commerce are a false designation of origin, and have caused and continue to cause confusion, mistake, and deception in the minds of the public.

84. Defendants' use of the Epic Tech Marks are a false designation of origin in interstate commerce that have infringed upon Plaintiff's trademark rights.

85. Based on Defendants' prior knowledge of the Epic Tech Marks, Defendants' actions have been knowing, intentional, wanton, and willful, entitling Epic Tech to monetary damages, treble damages, profits, attorney's fees, and the costs of this action.

86. By reason of the foregoing, such conduct on the part of the Defendants has injured and will continue to injure Epic Tech in an amount to be determined at trial, and has directly and proximately caused and threatens to cause irreparable injury to Epic Tech for which Epic Tech has no adequate remedy at law.

## COUNT III
## UNFAIR COMPETITION
## IN VIOLATION OF 15 U.S.C. § 1125(A)

87. Epic Tech repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

88. Defendants' use of the Epic Tech Marks constitutes use in commerce of a false and misleading description and representation of goods.

89. Defendants know that Epic Tech owns the Epic Tech Marks and utilizes the Epic Tech Marks in commerce.

90. Defendants' use of the Epic Tech Marks is likely to cause confusion, deception, and mistake among the purchasing public as to the source, approval, or sponsorship of the goods bearing or associated with the Epic Tech Marks.

91. The aforesaid acts of Defendants were committed willfully, knowingly, maliciously, and in conscious disregard of Epic Tech's rights.

92. Defendants' conduct has directly and proximately caused and, unless restrained by this Court, will continue to cause immediate and irreparable injury to Epic Tech.

93. Such conduct on the part of Defendants has injured and will continue to injure Epic Tech in an amount to be determined at trial, and has caused and threatens to cause irreparable injury to Epic Tech for which Epic Tech has no adequate remedy at law.

## COUNT IV
## DELAWARE STATE TRADEMARK INFRINGEMENT
## IN VIOLATION OF DEL. CODE ANN. TITLE 6, § 3312
## AND AT COMMON LAW

94. Epic Tech repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

95. The use of the term "Lucky Duck" by Defendants, without the consent of Epic Tech (the owner of the Word Mark), in connection with the sale, distribution, offer for sale, and/or advertising of Defendants' goods and services is likely to cause confusion or mistake or to deceive as to the source of origin of such goods and services.

96. The use of duck images by Defendants, without the consent of Epic Tech (the owner of the Image Mark and Mobile Mark), in connection with the sale, distribution, offer for sale, and/or advertising of Defendants' goods and services is likely to cause confusion or mistake or to deceive as to the source of origin of such goods and services.

97. In view of the foregoing, Defendants are in violation of Del. Code. Ann. Title 6, § 3312 and Delaware State Common Law. As a consequence of Defendants' trademark infringement, Epic Tech has suffered harm and damage in an amount not yet determined. Epic Tech will continue to suffer harm until Defendants' infringement is enjoined by this Court. Upon information and belief, such infringement has been and continues to be willful.

**COUNT V**
**DELAWARE STATE INJURY TO BUSINESS REPUTATION AND DILUTION IN VIOLATION OF DEL. CODE ANN. TITLE 6, § 3313 AND AT COMMON LAW**

98. Epic Tech repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

99. The use of the words "Lucky Duck" and related images of cartoon ducks substantially identical to the Image Mark and Mobile Mark by Defendants in connection with their goods and services is likely to injure the business reputation and/or dilute the distinctive quality of the Epic Tech Marks.

100. In view of the foregoing, Defendants are in violation of Del. Code Ann. Title 6, § 3313 and Delaware State Common Law. As a result of Defendants' actions, Epic Tech's business reputation has been injured and the Epic Tech Marks have been diluted, resulting in

damage to Epic Tech in an amount not yet determined. Epic Tech will continue to suffer harm until Defendants' use and other infringing activities are enjoined by this Court. Upon information and belief, such use and activities have been and continue to be willful.

## COUNT VI
## DELAWARE STATE UNFAIR COMPETITION

101. Epic Tech repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

102. The use of the title "Lucky Duck" and related images of cartoon ducks substantially identical to the Image Mark and Mobile Mark by Defendants in connection with their sale, offer for sale, and advertising of their goods and services is likely to cause confusion as to the source, sponsorship, and/or affiliation with Epic Tech, and is likely to cause confusion to customers.

103. Based on the foregoing, Defendants are in violation of Delaware State Common Law by engaging in unfair competition. As a consequence of Defendants' unfair competition, Epic Tech has suffered harm and damage in an amount not yet determined. Epic Tech will continue to suffer harm until Defendants' unfair competition is enjoined by this Court. Upon information and belief, such unfair competition has been and continues to be willful.

## COUNT VII
## DELAWARE STATE DECEPTIVE ACTS AND PRACTICES
## IN VIOLATION OF DEL. CODE. ANN. TITLE 6, § 2532 AND AT COMMON LAW

104. Epic Tech repeats and realleges the allegations contained in prior paragraphs as if fully set forth herein.

105. The use of the title "Lucky Duck" and related images of cartoon ducks substantially identical to the Image Mark by Defendants in connection with their sale, offer for

sale, and advertising of their goods and services is likely to cause confusion and is a deceptive act and/or practice in the conduct of a business, vocation, or occupation in the State of Delaware.

106. In view of the foregoing, Defendants are in violation of Del. Code. Ann. Title 6, § 2532 and Delaware State Common Law. As a consequence of Defendants' deceptive acts and practices, Epic Tech has suffered harm and damage in an amount not yet determined. Epic Tech will continue to suffer harm until Defendants' deceptive acts and practices are enjoined by this Court. Upon information and belief, such acts and practices have been and continues to be willful.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Epic Tech, LLC prays for judgment against Defendants that includes:

(a) A permanent injunction enjoining Defendants and any affiliated persons or entities (including their officers, directors, agents, employees, successors, and assigns and all others acting in knowing concert with them) from directly or indirectly:

    (1) Using any Epic Tech Mark or any confusingly similar mark or designation in connection with the marketing, promotion, and/or sale of video gaming related products, including mobile and Internet social casino gaming applications;

    (2) Engaging in any other or further acts of unfair competition against Epic Tech;

    (3) Using any trademark or trade name which will be likely to dilute the distinctive quality of the Epic Tech Marks; and

    (4)  Engaging in any deceptive trade practices in the offering of goods or services under or by the use of any of the Epic Tech Marks and/or any other variation or simulation of that Mark.

  (b)  Damages as set forth in 15 U.S.C. § 1117 (a), 6 Del. C. § 2531, ET SEQ., 6 Del. C. § 2513, and under Delaware's common law trademark infringement and unfair competition framework, including but not limited to, special and general damages in an amount to be proved at trial, all profits generated by Defendant from the infringement of the Epic Tech Marks;

  (c)  Punitive damages to be determined at trial;

  (d)  Epic Tech's reasonable attorney fees as set forth in 15 U.S.C. § 1117(a);

  (e)  Costs of suit incurred herein as set forth in 15 U.S.C. § 1117(a);

  (f)  An order directing Defendant to file with this Court and to serve upon Epic Tech within thirty (30) days after entry of the order a sworn written statement setting forth the manner, form, and details of Defendant's compliance with the other terms of the Court's order(s) and judgment herein; and

  (g)  Such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated: August 6, 2024 | Respectfully submitted, |
| | PANITCH SCHWARZE BELISARIO<br>& NADEL LLP |
| OF COUNSEL: | */s/ John D. Simmons* |
| Kelly O. Wallace (admitted *pro hac vice*)<br>Samuel A. Mullman (admitted *pro hac vice*)<br>WELLBORN, WALLACE &<br>MULLMAN, LLC<br>1218 Menlo Drive NW, Suite E<br>Atlanta, GA 30318<br>Telephone: (404) 352-3990<br>kelly@wellbornlaw.com<br>sam@wellbornlaw.com | John D. Simmons (#5996)<br>Keith A. Jones (#7011)<br>Wells Fargo Tower<br>2200 Concord Pike, Suite 201<br>Wilmington, DE 19820<br>Telephone: (302) 394-6030<br>Facsimile: (215) 965-1331<br>jsimmons@panitchlaw.com<br>kjones@panitchlaw.com |
| | ***Counsel for Plaintiff Epic Tech, LLC*** |